UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MYRA S. SMITH,

                Plaintiff,                        **MEMORANDUM AND ORDER**
                                                                                           17-CV-6965 (RRM) (RML)

     -against-

CVS ALBANY, LLC,

                Defendant.
------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

       In an electronic order entered March 13, 2023 (the "3/13/2023 Order"), the Court denied plaintiff Myra S. Smith's motion to reopen this case, which was settled following mediation in October 2018. On May 9, 2023, plaintiff filed a notice of appeal from the 3/13/2023 Order and a motion for an extension of the 30-day deadline for filing that appeal. Defendant CVS Albany, LLC ("CVS") opposes the motion for an extension of time, principally arguing that plaintiff has failed to show the "good cause or excusable neglect" that is required under Rule 4(a)(5) of the Federal Rules of Appellate Procedure. For the reasons set forth below, the Court finds that the plaintiff's submission does not establish "excusable neglect" and, despite plaintiff's *pro se* status, denies plaintiff an extension of time to file a notice of appeal relating to the 3/13/2023 Order.

## BACKGROUND

       The facts of this case were discussed in some detail in a memorandum and order dated September 27, 2019, (the "First M&O"), and in brief in a memorandum and order dated September 28, 2020 (the "Second M&O"). Although familiarity with these opinions is assumed, the Court will briefly recap the lengthy history of this case for the convenience of the reader.

In late March 2017, plaintiff commenced this *pro se* action against her employer, CVS, alleging a violation of the Age Discrimination in Employment Act and seeking, among other things, an order directing CVS to transfer her to a different store. (Compl. (Doc. No. 1).) In early April 2018, Magistrate Judge Robert M. Levy referred the case to the Court Annexed Mediation Advocacy Program and requested that the Court's Alternative Dispute Resolution Department obtain *pro bono* counsel to assist plaintiff at the mediation. (4/2/2018 Order.) With the assistance of that *pro bono* attorney, David Fish, the parties agreed to a settlement which involved transferring plaintiff to a new store. The parties executed a Confidential Settlement Agreement and General Release (Doc. No. 46) in October 2018.

Less than two months later, plaintiff filed a motion for declaratory relief, principally seeking to set aside the settlement agreement and resume mediation. (Doc. No. 28.) Defendant opposed that motion and cross-moved to dismiss the action in light of the settlement. (Docs. No. 30–31.) Plaintiff replied by moving for an "injunction and restraining order" preventing CVS from taking adverse employment actions against her during the pendency of this case. (Mot. for Injunction and Restraining Order (Doc. No. 34).)

On September 27, 2019, the Court denied plaintiff's motions and dismissed the action pursuant to the parties' settlement agreement. (First M&O (Doc. No. 48).) Plaintiff promptly moved for reconsideration of that order, and defendant opposed that motion. (Docs. No. 57–59.) On September 28, 2020, the Court issued the Second M&O, denying plaintiff's motion. (Second M&O (Doc. No. 61).)

On November 24, 2020, plaintiff filed a three-page document entitled "Notice of Appeal and Motion for Extension of Time." (Doc. No. 63.) The notice of appeal was contained in the first paragraph of the document, which stated, in pertinent part: "Notice is hereby given that

Plaintiff … appeals to the United States Court of Appeals for the Second Circuit from the decision in this action on September 28, 2020 ….." (Notice of Appeal and Motion for Extension of Time at ¶1.)  The second paragraph contained the motion for an extension of time and stated, in pertinent part: "In the event this form was not received in the Clerk's Office within the required time, Plaintiff … respectfully requests the Court to grant an extension of time in accordance with FRAP 4(a)(5) for the following reasons which constitute good cause …." (*Id.* at ¶ 2.)

Although defendant opposed the motion for an extension of time, the Court granted that motion in an electronic order dated December 8, 2020.  Thereafter, plaintiff moved the Second Circuit for a 60-day extension of time to file her principal brief and appendix.  That motion, which was unopposed, was granted in an order dated May 6, 2021.  (Doc. No. 65.)  However, that order provided that the appeal would be dismissed effective July 6, 2021, unless plaintiff's brief was filed by that date.  (*Id.*)

Plaintiff did not timely file her brief and, on July 23, 2021, the Second Circuit issued a mandate dismissing the appeal.  (*Id.*)  Plaintiff then moved to recall the mandate and reinstate her appeal.  In light of plaintiff's *pro se* status, the Second Circuit granted the motion in an order dated October 26, 2021.  (Doc. No. 66.)  Plaintiff subsequently moved to withdraw the appeal without prejudice, but defendant opposed that motion and the Second Circuit denied it on June 24, 2022.

On July 29, 2022, before the Second Circuit ruled on the appeal, plaintiff filed another motion for reconsideration of the First M&O.  (Motion for Reconsideration (Doc. No. 67).)  Three days later, on August 1, 2022, the Second Circuit affirmed the Court's Second M&O, concluding that the Court had not abused its discretion in denying plaintiff's first motion for

reconsideration. (USCA Summary Order (Doc. No. 68).) Less than two weeks later, this Court summarily denied plaintiff's second motion for reconsideration. (8/12/2022 Order.)

On February 28, 2023, plaintiff filed yet another motion for reconsideration, which was docketed as a "Motion to Reopen." (Doc. No. 70.) On the morning of March 13, 2023, defendant filed its opposition to the motion. (Defendant's Opposition to Plaintiff's Motion to Reopen (Doc. No. 71).) That afternoon, the Court issued an electronic order denying the motion. (3/13/2023 Order.) Since plaintiff claimed that she had not received a copy of the Court's 8/12/2022 Order, the Court directed defendant to serve a copy of both the 8/12/2022 Order and the 3/13/2023 Order on plaintiff via overnight mail and to file proof of that mailing on the docket sheet. Defendant complied with this directive on March 13, 2023, by mailing copies of both orders to plaintiff via first-class and overnight mail. (Certificate of Service (Doc. No. 72).)

The Motion

On May 9, 2023, plaintiff hand-delivered to the Clerk's Office a document entitled "Notice of Appeal and Motion for Extension of Time" (the "Motion"). The first two paragraphs of that document are, except for the dates, identical to the first two paragraphs of the document—also entitled "Notice of Appeal and Motion for Extension of Time"—that plaintiff filed on November 24, 2020. The first paragraph contains the notice of appeal and states, in pertinent part: "Notice is hereby given that Plaintiff … appeals to the United States Court of Appeals for the Second Circuit from the decision in this action on March 13, 2023 …." (Motion (Doc. No. 73) at ¶ 1.) The second paragraph introduces the motion for an extension of time by stating: "In the event this form was not received in the Clerk's Office within the required time, Plaintiff … respectfully requests the Court to grant an extension of time in accordance with FRAP 4(a)(5) for

4

the following reasons which constitute good cause ….." (*Id.* at ¶ 2.) Those reasons are discussed in the remaining paragraphs of the five-page Motion.

Read liberally, the Motion suggests four reasons for the delay in filing the notice of appeal which, plaintiff asserts, "constitute good cause" for the extension of time. First, it states that plaintiff suffered an injury to her right knee on March 31, 2018, while working at CVS, but has been unable to receive effective treatment due to defendant's refusal to file certain "mandatory documents" with the Workers' Compensation Board. (Motion at 1–2.) Specifically, plaintiff states that she has "been awaiting authorization for more physical therapy" since January 26, 2023, and has been forced to use "less effective treatment"—such as a leg brace— "in the meantime." (*Id.* at 2.) The Motion does not represent that this has rendered plaintiff unable to walk. To the contrary, it states that the leg brace has enabled her to "walk more," causing her to lose enough weight to render the leg brace "too big, poorly fitted and less effective." (*Id.*) However, according to the Motion, "[s]ince Plaintiff is a commuter, the pain from this injury slows every motion and Plaintiff simply cannot overcome obstacles which have been exacerbated by a recovery from the shutdown which means a lot more legwork trying to negotiate every aspect of life with operations that are not accessible any other way." (*Id.* at 3.)

Second, the Motion suggests that, due to COVID, plaintiff has been "without access to the resources or assistance normally available" to *pro se* litigants. (*Id.*) Specifically, the Motion claims that "the Courthouse Law Library … upon the most recent information is still closed" and that the *Pro Se* Staff Attorneys Office "is still not fully operative since the shutdown." (*Id.*) The Motion implies that plaintiff relied on the Law Library staff for "assistance about researching functional points," (*id.*), but does not explain what research was needed to file a timely notice of appeal.

5

Third, the Motion alludes to telecommunications problems in Crown Heights, Brooklyn, the neighborhood where plaintiff lives. The Motion states that AT&T has been transitioning to 5G technology and that "some cellular devices are not fully operative in the neighborhood where plaintiff lives for any purpose, including voice calls." (*Id.* at 3–4.) In addition, due to Verizon's delays in repairing her landline, plaintiff cannot send or receive faxes from home. (*Id.* at 4.)

Fourth, the Motion asserts that plaintiff did not receive a copy of the 3/13/2023 Order for "about a week" after it was issued. (*Id.* at 5.) Plaintiff concedes that defendant sent her the order via overnight mail, but claims that this mailing ended up on the floor of the lobby of her 80-unit apartment building. (*Id.*) As a result, she received the overnight mailing "around the same time" as she received a copy of the order that was sent to her via regular mail. (*Id.*)

## STANDARD OF REVIEW

"An appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4" of the Federal Rules of Appellate Procedure. Fed. R. App. P. 3(a)(1). In a civil case, with some exceptions that are inapplicable here, the notice of appeal "must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). The Supreme Court "has long held that the taking of an appeal within the prescribed time is 'mandatory and jurisdictional.'" *Bowles v. Russell*, 551 U.S. 205, 209 (2007) (citing cases). However, a district court "may extend the time to file a notice of appeal if: (i) a party so moves no later than 30 days after the time prescribed by … Rule 4(a) expires … and (ii) … that party shows excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A).

"The good cause and excusable neglect standards have different domains and are not interchangeable." *Alexander v. Saul*, 5 F.4th 139, 147 (2d Cir. 2021) (internal quotation marks

and citations omitted), *cert. denied sub nom. Alexander v. Kijakazi*, 142 S. Ct. 1461 (2022).  The "good cause" standard only applies where the movant is not at fault for missing the deadline, such as when the Postal Service fails to deliver a notice to appeal.  *Id.*  Where, as here, a movant's "failure to appeal in a timely fashion was at least partially due to her own inadvertence, 'excusable neglect,' rather than 'good cause,' is the appropriate standard." *Id.* at 142.  "The burden of proving excusable neglect lies with the late-claimant." *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005) (quoting *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000)).

"To determine whether a litigant has established 'excusable neglect' under Federal Rule of Appellate Procedure 4(a)(5), courts consider the four factors set forth by the Supreme Court in *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380 … (1993)." *Alexander*, 5 F.4th at 142.  Those factors are: "[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.* (quoting *Pioneer*, 507 U.S. at 395).  The Second Circuit "'taken a hard line' in applying the *Pioneer* test." *In re Enron Corp.*, 419 F.3d at 115.  The excusable neglect inquiry is "at bottom an equitable one," *Pioneer*, 507 U.S. at 395, and "the equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court rule." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003) (quoting *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997)) (alteration in *Silivanch*).  Thus, if "the rule is entirely clear," the Second Circuit "expect[s] that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Silivanch*, 333 F.3d at 366–67 (quoting *Canfield*, 127 F.3d at 251).

7

As the Second Circuit has noted, three of the four *Pioneer* factors "usually weigh in favor of the party seeking the extension." *Silivanch*, 333 F.3d at 366.  With respect to the first two *Pioneer* factors, "delay always will be minimal in actual if not relative terms, and the prejudice to the non-movant will often be negligible, since the Rule requires a 4(a)(5) motion to be filed within thirty days of the last day for filing a timely notice of appeal." *Id.* (quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)) (brackets added in *Silivanch*).  As to the fourth factor, "rarely in the decided cases is the absence of good faith at issue." *Id.*  Thus, "despite … the existence of the four-factor test …, [the Second Circuit] and other circuits have focused on the third factor: the reason for the delay, including whether it was within the reasonable control of the movant." *Silivanch*, 333 F.3d at 366 (internal quotation marks and citations omitted).  The Second Circuit has noted that "[a]ffording dispositive weight to that factor accords with … precedents, which have described the reason for the delay as the most important *Pioneer* factor." *Alexander*, 5 F.4th at 149 (citing cases).

## DISCUSSION

In this case, the first, second, and fourth factors weigh in plaintiff's favor.  But plaintiff has not established a reason for the delay in filing the notice of appeal that was not within her control.  While plaintiff alleges that there were delays in her receipt of the 3/13/2023 Order, she concedes that she received two copies of that decision "about a week" after it was issued.  (Motion at 4–5.)  Accordingly, this is not a case in which the failure to meet the 30-day deadline for filing the notice of appeal was attributable to post-office failures or a failure to serve a copy of the order being appealed.

The three other reasons suggested in the Motion do not explain why plaintiff was unable to file a timely notice of appeal after her receipt of the 3/13/2023 Order.  First, even assuming

8

that plaintiff was unable to access a law library or the Court's *Pro Se* Staff Attorneys, plaintiff has not explained how these limitations prevented her from filing her notice of appeal. Although *pro se*, plaintiff was already very familiar with the intricacies of appellate practice having already pursued an appeal of the Second M&O. In connection with that appeal, plaintiff filed a "Notice of Appeal and Motion for Extension of Time," the first two paragraphs of which were nearly identical to the first two paragraphs of the Motion. (*See* Notice of Appeal and Motion for Extension of Time filed 11/24/2020 (Doc. No. 62 at ¶¶1, 2, & 2(a).) Accordingly, plaintiff was already well aware of how to file a notice of appeal and the deadline for doing so.

Plaintiff also has not explained how her mobility issues or telecommunications problems prevented her from timely filing the notice of appeal. First, although plaintiff asserts that she has a knee injury and has "been awaiting authorization for more physical therapy" since January 26, 2023, (Motion at 2), she does not allege that this injury prevented her from walking. To the contrary, she states that while awaiting the authorization, she used a leg brace which enabled her to walk so much that she began to lose weight. (*Id.*) While the weight loss eventually rendered the leg brace "too big, poorly fitted and less effective," (*id.*), plaintiff does not suggest that she was ever incapacitated. Rather, the Motion states that she was "a commuter" at the time the Motion was filed, even though the injury slowed "every motion" and created certain unspecified "obstacles" that created "more legwork." (*Id.* at 3.)

Second, the Motion does not suggest that plaintiff's telecommunication problems prevented her from filing the notice of appeal. The Federal Rules of Civil Procedure provide that a "person not represented by an attorney … (i) may file electronically only if allowed by court order or by local rule …." Fed. R. Civ. P. 5(d)(3)(B). To be sure, this district has established a procedure enabling "self-represented litigants who cannot mail or hand deliver filings to the

9

Courthouse due to the COVID-19 pandemic" to submit their filings electronically. *See* "Pro Se Electronic Document Submission During COVID-19 Pandemic," (available on the district's website under the "Self-Represented Parties" tab), dated May 5, 2022. However, there is no indication that plaintiff was eligible to use this procedure because she was unable to mail or hand-deliver her notice of appeal to the Courthouse. To the contrary, the record establishes that plaintiff was able to hand-deliver the notice of appeal to the Clerk's Office, albeit 27 days late.

In finding that plaintiff has not met her burden of proving excusable neglect, the Court is "mindful of the fact that '*pro se* plaintiffs should be granted special leniency regarding procedural matters.'" *Jefferson v. Webber*, 777 F. App'x 11, 14 (2d Cir. 2019) (summary order) (quoting *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001)). However, the Court notes that plaintiff has already been afforded considerable leniency in connection with her previous appeal. The Court granted plaintiff's motion for an extension of time to file the notice of appeal from the Second M&O, even though that notice of appeal was also 57 days late. The Second Circuit then extended further leniency by extending plaintiff's time to file her appellate brief and reinstating plaintiff's appeal after she missed the briefing deadline. As a result, plaintiff was able to appeal the Second M&O, which was itself plaintiff's second motion for reconsideration in this case—a case which was resolved by a settlement agreement that plaintiff negotiated with the assistance of *pro bono* counsel. Given the equitable nature of the excusable neglect inquiry, *see Pioneer*, 507 U.S. at 395, the Court is not inclined to afford further leniency to plaintiff.

## CONCLUSION

For the reasons set forth above, the Court finds that plaintiff has not established a reason outside of her control for the failure to meet the 30-day deadline for filing the notice of appeal from the Court's 3/13/2023 Order. Although the other three *Pioneer* factors favor plaintiff, the Court concludes that plaintiff has not met her burden of establishing excusable neglect under Rule 4(a)(5) of the Federal Rules of Appellate Procedure. Accordingly, plaintiff's motion for an extension of time in which to file her notice of appeal from this Court's March 13, 2023, Order is denied.

SO ORDERED.

Dated: Brooklyn, New York
August 10, 2023

*Roslynn R. Mauskopf*
ROSLYNN R. MAUSKOPF
United States District Judge